Larry W. Lee (State Bar No. 228175)
Kristen M. Agnew (State Bar No. 247656)
Mai Tulyathan (State Bar No. 316704)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Tel: (213) 488-6555
Fax: (213) 488-6554
lwlee@diversitylaw.com
kagnew@diversitylaw.com
ktulyathan@diversitylaw.com

William L. Marder (State Bar No. 170131)
bill@polarislawgroup.com
**Polaris Law Group**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333

Attorneys for Plaintiff, the Class, and Aggrieved Employees

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHELLE WESTMORELAND, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KINDERCARE EDUCATION LLC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:23-cv-03168-JD<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      April 3, 2025<br>Time:      10:00 A.M.<br>Courtroom:   11<br>Judge:      Hon. James Donato<br><br>Action Filed:   January 24, 2019 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 3, 2025, at 10:00 a.m., or as soon thereafter as the matter can be heard in Courtroom 11 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, Plaintiff Rochelle Westmoreland ("Plaintiff") will and hereby does move this Court for an Order preliminarily approving the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court: (1) grant preliminary approval for the proposed class action settlement; (2) grant certification of the proposed settlement class; (3) authorize the mailing of the proposed notice to the class of the settlement; and (4) schedule a "fairness hearing," *i.e.*, a hearing on the final approval of the settlement.

Plaintiff makes this unopposed motion on the grounds that the proposed settlement is within the range of possible final approval, and notice should, therefore, be provided to the class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the attached Memorandum of Points and Authorities in Support, the Declarations of Larry W. Lee, Mai Tulyathan, William L. Marder, and Rochelle Westmoreland filed herewith, the Stipulation of Class Settlement and Release filed herewith, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated: February 3, 2025                     DIVERSITY LAW GROUP, P.C.


By:   ___/s/ Mai Tulyathan_____
                Larry W. Lee
                Mai Tulyathan
        Attorneys for Plaintiff, the Class, and Aggrieved
        Employees

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF AGREEMENT ........................................................ 7

   A.   Factual Allegations ............................................................................................. 7

   B.   Procedural Background ....................................................................................... 7

      1.   Summary of the Litigation ...................................................................... 7

      2.   Summary of Investigation and Discovery ............................................... 9

   C.   Summary of the Current Settlement ................................................................... 9

   D.   The Settlement is Fair, Reasonable, and Adequate .......................................... 11

II.  LEGAL ANALYSIS ................................................................................................... 12

   A.   The Class at Issue and the Settlement Fund ..................................................... 12

   B.   Two-Step Approval Process .............................................................................. 12

   C.   The Standard for Preliminary Approval ........................................................... 13

   D.   The Proposed Settlement Class Satisfies the Elements for Class Certification ... 14

      1.   Numerosity ............................................................................................. 15

      2.   Ascertainability ..................................................................................... 15

      3.   Typicality ............................................................................................... 16

      4.   Commonality .......................................................................................... 16

      5.   Adequacy ............................................................................................... 17

      6.   Common Questions of Law and Fact Predominate ............................... 17

      7.   Superiority of Class Action ................................................................... 17

   E.   The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion ... 18

      1.   The Settlement May be Presumed Fair and Reasonable ....................... 18

      2.   The Settlement is Fair, Reasonable, and Adequate ............................... 20

   F.   The Notice to be Given is the Best Practicable ................................................ 23

   G.   Attorney's Fees, Costs, and Class Representative Enhancement ..................... 24

   H.   Settlement Administrator .................................................................................. 24

   I.   CAFA Notice .................................................................................................... 25

III. CONCLUSION ........................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**State Cases**

*City of San Jose v. Superior Court*, 12 Cal. 3d 447 (1974) ................................................. 16

*Richmond v. Dart Industries, Inc*., 29 Cal. 3d 462 (1981)................................................. 16

*Stephens v. Montgomery Ward & Co*., 193 Cal. App. 3d 411 (1987) ........................................ 16

*Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) ................................................................. 16

**Federal Cases**

*Boyd v. Bechtel Corp*., 485 F. Supp. 610 (N.D. Cal. 1979) ................................................. 21

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)......................................................... 21, 22

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990) ................................................... 18

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (1998)..................................................... 16

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ........................... 15

*Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372 (C.D. Cal. 2012) ................................... 20

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957 (N.D. Ga. 1980)..................................... 18

*In re Excess Value Ins. Coverage Litig*., No. M-21-84 (RMB), 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ................................................................................................... 18

*In re General Motors Corp*., 55 F.3d 768 (3d Cir. 1995) ................................................. 21

*In re Inter-Op Hip Prosthesis Liab. Litig*., 204 F.R.D. 359 (N.D. Ohio 2001) ....................... 18

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251 (C.D. Cal. 1988) ............................................................................................. 16

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ................................. 17

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677 (7th Cir. 1987) ........... 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523 (C.D. Cal. 2004)..................... 18, 23

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ...................................................................................... 13, 14, 15, 22

*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp*., 323 F. Supp. 364 (E.D. Pa. 1970) ........................................................................................................ 14

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989)...................................................... 18

*Schiller v. David's Bridal, Inc.*, 2010 WL 2793650 (E.D. Cal. 2010) ........................................ 20

*See Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008) ................................................................................................................ 17

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978) ................ 18

*Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979) ........................................................... 18

*Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437 (9th Cir. 1989) .......................... 13, 15

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ............................................... 23

*Vaquero v. Ashley Furniture Indus., Inc.*, 2012 WL 12965744 (C.D. Cal. 2012) ............................ 20

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997) ....................................... 15

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .............................................................. 18

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ...................................................................... 22

**Statutes**

28 U.S.C. § 1715 ...................................................................................................... 25

Labor Code § 203 ..................................................................................................... 20

Labor Code § 212 .................................................................................................. 8, 22

Labor Code § 213 .................................................................................................. 8, 22

Labor Code § 2698, *et seq.* ......................................................................................... 8

Labor Code § 2699(f) ................................................................................................. 20

Labor Code §§ 201-203 ......................................................................................... 7, 8, 22

**Other Authorities**

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010) ........................... 14

Alba Conte & Herbert B. Newberg, *4 Newberg on Class Actions* § 11.26 (4th ed. 2010) ................ 18

Alba Conte & Herbert B. Newberg, *4 Newberg on Class Actions* § 11.26 (4th ed. 2010) ........... 13, 15

Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11.41 (4th ed. 2010) ............... 23

Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11.45 (4th ed. 2010) ............... 21

Manual for Complex Litigation § 21.632 (Fed. Jud. Ctr., 4th ed 2004) ................................. 21

*Manual for Complex Litigation* § 21.632 (Fed. Jud. Ctr., 4th ed. 2004) ................................ 13

Manual for Complex Litigation § 21.633 (Fed. Jud. Ctr., 4th ed. 2004) ................................ 14

**NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Rules**

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 17

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 15

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 23

Fed. R. Civ. P. 23(e)(B) ........................................................................................... 23

Fed. R. Civ. P. 23(a) ................................................................................................ 13

Fed. R. Civ. P. 23(b) ................................................................................................ 13

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 17, 23

NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF AGREEMENT

Plaintiff Rochelle Westmoreland ("Plaintiff") respectfully requests that the Court grant preliminary approval of the Stipulation of Class Settlement and Release ("Stipulation" or "Settlement Agreement")[1] that she has reached in the above-captioned matter with Defendant KinderCare Education LLC ("Defendant") (Plaintiff and Defendant collectively referred to as the "Parties").

### A.    Factual Allegations

Plaintiff is a former employee of Defendant.  Plaintiff was employed by Defendant as a non-exempt employee in the position of Director, until the termination of her employment on January 7, 2019.  Declaration of Rochelle Westmoreland ("Westmoreland Decl.") at ¶ 2.  In this lawsuit, Plaintiff alleges that, as with all other former employees of Defendant in the State of California, she was paid her final wages in the form of a paycard.  Plaintiff, however, never gave authorization or consented to receive her wages, including her final wages in the form of a paycard.  Moreover, Plaintiff was charged fees for use of the card and has been unable to access all the monies contained on the paycard.  As such, Plaintiff alleges that she was not paid all final wages due upon termination of employment, in violation of Labor Code §§ 201-203.

Defendant denies that it has engaged in any alleged unlawful conduct and maintains that it has complied with California law.  Settlement Agreement ¶ 5.  In this regard, Defendant maintains that its payment practices are compliant with California law and that any fees incurred by class members were lawful.

### B.    Procedural Background

#### 1.    Summary of the Litigation

On January 24, 2019, Plaintiff filed a class action complaint against Defendant in the Superior Court of California, County of San Francisco (the "Action").  Declaration of Mai Tulyathan ("Tulyathan Decl.") at ¶ 2.  On February 26, 2019, Plaintiff filed a First Amended Complaint, which is the operative complaint in this Action.  The operative complaint alleged claims arising from a central allegation that

---

[1] The Settlement Agreement is attached to the Declaration of Mai Tulyathan as Exhibit A.

Defendant violated Labor Code §§ 201-203, 212, 213, and 2698, *et seq.*, by paying final wages to separated employees in the form of paycards without obtaining authorization/consent from employees, which required employees to incur fees to use, was not fully cashable, and was not usable at all financial institutions.  The operative complaint alleges both class claims and representative claims under the Labor Code Private Attorneys General Act ("PAGA").  *Id.* at ¶ 3.

The Parties then heavily litigated arbitrability in state court, including two motions to compel arbitration and subsequent appeals.  *Id.* at ¶ 4.  Specifically, on April 16, 2019, Defendant filed a motion to compel arbitration of Plaintiff's individual claims and stay non-arbitrable claims.  Defendant's motion was granted by the Court on January 13, 2020.  *Id.* at ¶ 5.  On March 13, 2020, Plaintiff filed a petition for peremptory writ of mandate in the California Court of Appeal to reverse the trial court's decision.  The appellate court subsequently found the underlying arbitration agreement unenforceable and issued an alternative writ of mandate to the trial court to set aside its January 13, 2020 order.  *Id.* at ¶ 6.  In response, Defendant filed a petition for rehearing in the California Court of Appeal, petition for review before the California Supreme Court, and petition for writ of certiorari in the United States Supreme Court.  The final petition for writ of certiorari was denied on October 4, 2021.  *Id.* at ¶ 7.

On July 27, 2021, Defendant filed a renewed motion to compel arbitration of Plaintiff's non-PAGA claims and stay PAGA claims.  Tulyathan Decl. at ¶ 8.  On October 27, 2021, the Court denied Defendant's renewed motion.  *Id.*  Thereafter, Defendant filed a notice of appeal with the California Court of Appeal.  On April 24, 2023, the appellate court issued its order affirming the trial court's denial of Defendant's renewed motion to compel arbitration.  *Id.* at ¶ 9.

During the ongoing appellate review, on March 4, 2022, the Parties engaged in private mediation with experienced neutral Steve Rottman, Esq.  Despite arm's length negotiations, the Parties did not reach an agreement and continued litigation and discovery.  *Id.* at ¶ 10.

On June 27, 2023, Defendant removed the Action to the United States District Court for the Northern District of California, Case No. 3:23-cv-03168.  Dkt. No. 1.  Plaintiff filed a motion to remand on July 27, 2023.  Dkt. No. 9.  Plaintiff's motion to remand was denied.  Dkt. No. 35.

On March 18, 2024, Defendant filed a motion for summary judgment. Dkt. No. 29.

After further litigation and discovery, the Parties reached a tentative settlement in early

**8**

November 2024.  Tulyathan Decl. at ¶ 14.  The Parties now present the Court with the Settlement

Agreement for approval.

### 2.      Summary of Investigation and Discovery

With respect to investigation and discovery, Plaintiff conducted investigation of the facts

surrounding the claims in this action before filing suit, as well as extensive discovery in state and federal

court during the course of litigating and prosecuting this case.  The Parties propounded and responded to

multiple rounds of written discovery, including interrogatories and requests for production of

documents, as well as class discovery.  *Id*. at ¶ 15.  In connection with written discovery, Plaintiff also

obtained and reviewed Defendant's document production, including policy documents and payroll

records.  *Id*. at ¶ 16.

In addition to written discovery, Plaintiff's counsel took the deposition of Defendant's FRCP

30(b)(6) corporate representative on various topics that impacted class certification and liability,

including Defendant's policies pertaining to the issuance of paycards, any deduction of fees, obtaining

authorizations to issue paycards, among other topics.  *Id*. at ¶ 17.  Additionally, the Parties obtained,

reviewed, and analyzed voluminous paycard transaction records from third-party payroll processing

firm, ADP. This included transaction records from ADP for the use of paycards for all class members

during the relevant class period.  *Id*. at ¶ 19.  Moreover, prior to settlement, the Parties agreed to send a

*Belaire-West* notice to putative class members.  *Id*. at ¶ 20.  Defendant also took Plaintiff's deposition on

January 25, 2024.  *Id*. at ¶ 18.

In sum, as evidenced from the docket, this case has been substantively and vigorously litigated

by both Parties.

### C.      Summary of the Current Settlement

The Parties initially attempted to resolve this case by attending mediation with neutral Steve

Rottman on March 4, 2022.  Tulyathan Decl. at ¶ 22.  The Parties did not reach an agreement and

continued litigation and discovery.  *Id*.

Following years of vigorous litigation, in September 2024, the Parties attempted informal

resolution of the Action once more.  The Parties engaged in arm's-length negotiations and reached an

agreement in principle in or about November 2024.  *Id*. at ¶ 23.  After further discussion and negotiation,

the Parties finalized the settlement of all claims, the terms of which are detailed in the Settlement Agreement. *Id.* at ¶ 24.

The Settlement Agreement provides for a total settlement sum of Nine Hundred Thousand Dollars ($900,000.00) ("Gross Fund Value"), inclusive of payments to Class Members, payment of an enhancement award to Plaintiff, attorneys' fees and costs, payment of PAGA penalties ("PAGA Payment") to the California Labor and Workforce Development Agency ("LWDA") for the PAGA claims, and settlement administration costs. Settlement Agreement ¶¶ 10, 11.a-11.d.

The Settlement Agreement provides that $50,000.00 of the Gross Fund Value will be allocated to the settlement of PAGA claims in this Action. Settlement Agreement ¶ 11.d. Pursuant to the PAGA, 75 percent of the PAGA penalties, or $37,500.00 will be paid to the Labor & Workforce Development Agency (LWDA), and 25 percent of the PAGA penalties, or $12,500.00 will become part of the net settlement amount to be equally distributed among the class members. *Id.*

Pursuant to the terms of the Settlement Agreement, the net settlement amount or "Net Fund Value" (calculated after deduction of attorneys' fees in the amount of up to Three Hundred Thousand Dollars ($300,000.00), litigation costs of up to Fifty Thousand Dollars ($50,000.00), an enhancement award to Plaintiff in the amount of up to Ten Thousand Dollars ($10,000.00), payment of PAGA penalties to the LWDA in the amount of Thirty-Seven Thousand Five Hundred Dollars ($37,500.00), and costs of settlement administration in the amount of approximately Twenty-Two Thousand Seven Hundred Fifty Dollars ($22,750.00)) is approximately **$479,750.00**. Settlement Agreement ¶¶ 10, 11.a-11.e, 11.g; Tulyathan Decl. at ¶ 30. As provided in the Settlement Agreement, one hundred percent (100%) of each individual settlement share will be allocated as penalties and will be subject to all authorized and required withholdings and will be reported on IRS 1099 forms. Settlement Agreement ¶ 13.i.

**Significantly, this settlement is non-reversionary and does <u>not</u> involve the use of claim forms**. Settlement Agreement ¶¶ 9, 11.f, 11.g, 13.b. In other words, none of the unclaimed settlement funds will revert back to Defendant and Class Members need not do anything to receive their share. Instead, the Class Members will automatically receive their share of the settlement funds so long as they do not opt-out from the settlement.

Additionally, the remaining monies from uncashed checks shall be paid to the *cy pres* beneficiary of the settlement, Legal Aid At Work.  Settlement Agreement ¶ 13.h.  Legal Aid At Work is a non-profit legal services organization that provides legal assistance to low-income individuals and provides policy advocacy with a focus on protecting workplace rights, for and on behalf of California low-income individuals and/or low-wage earners.  Tulyathan Decl. at ¶ 37.  The Parties and their respective counsel do not have a relationship with Legal Aid at Work.  Tulyathan Decl. at ¶ 38; Declaration of Larry W. Lee ("Lee Decl.") at ¶ 7; Declaration of William L. Marder ("Marder Decl.") at ¶ 18.

The settlement class consists of "[f]ormer employees who worked for KinderCare Education LLC in the State of California at any time between January 24, 2016, through November 5, 2024[2], whose employment was separated for any reason (voluntary or involuntary), including without limitation, resignation, termination, and/or lay-off, and during their employment was paid their wages via a non-paycard method but upon their separation of employment were paid their final pay on a paycard and were subsequently charged a fee on the paycard for any usage, as reflected in ADP's records of paycard activity" (the "Settlement Class" or "Class Members").  Settlement Agreement ¶ 3. The identities of Class Members can be ascertained from Defendant's records and paycard records obtained from ADP.  Based upon these records, the estimated number of unique Class Members is approximately 3,469.  *Id*. ¶ 10.  Class Members also have the right to opt-out and exclude themselves from the settlement, and have 45 days after the initial mailing of the Notice of Settlement of Class Action ("Notice") to do so.  *Id*. ¶¶ 15, 16.

### D.    The Settlement is Fair, Reasonable, and Adequate

Based on their own respective independent investigations and evaluations, the Parties and their respective counsel are of the opinion that settlement for the consideration and on the terms set forth in their Settlement Agreement is fair, reasonable, and adequate and is in the best interests of the class and the Defendant in light of all known facts and circumstances and the expenses and risks inherent in litigation.  Tulyathan Decl. at ¶ 44; Lee Decl. at ¶ 2; Marder Decl. at ¶ 16.

---

[2] The November 5, 2024 as the end date represents the date that the Parties reached the settlement.  Tulyathan Decl. at ¶ 26.

Based on the approximately 3,469 Class Members, each Class Member will receive a raw average of approximately $138.30, after deduction for attorneys' fees, litigation costs, class representative enhancement award, settlement administration costs, and payment to the LWDA, provided that these amounts are approved by the Court in full.  Tulyathan Decl. at ¶ 31.  Each Class Member who does not opt out ("Participating Class Member") may receive a settlement amount that is more or less than this raw average, depending on the number of opt-outs received.  *Id*.; Settlement Agreement ¶ 18.

Each Participating Class Member will be paid an equal share of the Net Fund Value (per capita basis).  Settlement Agreement ¶ 11.g.

## II.    LEGAL ANALYSIS

### A.    The Class at Issue and the Settlement Fund

Defendant has agreed to provide information regarding the identity of the members of the Settlement Class, including contact information and date of termination during the settlement period.  Settlement Agreement ¶ 14.  As set forth in the Settlement Agreement, the Settlement Class consists of "[f]ormer employees who worked for KinderCare Education LLC in the State of California at any time between January 24, 2016, through November 5, 2024, whose employment was separated for any reason (voluntary or involuntary), including without limitation, resignation, termination, and/or lay-off, and during their employment was paid their wages via a non-paycard method but upon their separation of employment were paid their final pay on a paycard and were subsequently charged a fee on the paycard for any usage, as reflected in ADP's records of paycard activity."  *Id*. ¶ 3.  Pursuant to the Northern District Procedural Guidelines, the only difference between the definition of the proposed Settlement Class and the class proposed in the operative complaint is that the proposed Settlement Class is further narrowed to those who were actually charged a fee on the paycard for any usage, as reflected in the subpoenaed ADP paycard records that the Parties reviewed and analyzed.  Tulyathan Decl. at ¶ 27.

Again, the Parties have agreed that the settlement is non-reversionary and will proceed without the use of claim forms.  *Id*. ¶¶ 9, 11.f, 13.b.

### B.    Two-Step Approval Process

Any settlement of class litigation must be reviewed and approved by the court. This is done in

two steps: (1) an early (preliminary) review by the court, and (2) a final review and approval by the

court after notice has been distributed to the class members for their comment or objections. The

*Manual for Complex Litigation, Fourth* states:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Manual for Complex Litigation* ("MCL") § 21.632 (Fed. Jud. Ctr., 4th ed. 2004).

Thus, the preliminary approval by the trial court is simply a conditional finding that the

settlement appears to be within the range of acceptable settlements.  As Professor Newberg comments:

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary. The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing.

Alba Conte & Herbert B. Newberg, *4 Newberg on Class Actions* § 11.26 (4th ed. 2010).  Accordingly, a

court should grant preliminary approval of a class action settlement where it is within the "range of

reasonableness."  Here, the Parties have reached such an agreement that is fair, reasonable, and

adequate, and have submitted it to the Court in connection with this filing.

### C.    The Standard for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving disputes.  *Util.*

*Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is especially true

in complex class actions such as this case.  *Officers for Justice v. Civil Serv. Comm'n of City & County*

*of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Preliminary approval does not require the court to make a final determination that the settlement

is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after

notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010). In considering the settlement, the court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice*, 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement...may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp*., 323 F. Supp. 364, 372 (E.D. Pa. 1970).

"The judge should raise questions at the preliminary hearing and perhaps seek an independent review if there are reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." MCL § 21.633.

Here, the proposed settlement does not pose such issues.  This was a highly contentious litigation with the Parties each being represented by experienced counsel.  As discussed above and in the declarations submitted herewith, the Parties engaged in substantial motion and appellate practice, including briefing before the California Court of Appeal, California Supreme Court, and United States Supreme Court, two motions to compel arbitration, and motions for remand and summary judgment. The Parties conducted thorough investigations related to the claims and defenses alleged in this case. The Parties also conducted formal discovery, including taking depositions and reviewing records that were subpoenaed from third party.  Further, the proposed settlement was reached after years of contentious litigation, mediation with an experienced neutral, and substantial arm's-length negotiations between the Parties.

As detailed herein, the proposed settlement satisfies the standard for preliminary approval as it is well within the range of possible approval and there are no grounds to doubt its fairness.  The Parties' attorneys have extensive experience in employment law, particularly wage and hour litigation, and reached settlement only after years of extensive litigation and arm's length negotiations.

### D.    The Proposed Settlement Class Satisfies the Elements for Class Certification

The parties also may, at the preliminary approval stage, request that the court provisionally

approve certification of the class—conditional upon final approval of the settlement. Settlements are highly favored, particularly in class actions. *Util. Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice*, 688 F.2d at 625; *Wilkerson v. Martin Marietta Corp*., 171 F.R.D. 273, 284 (D. Colo. 1997). Plaintiff requests such provisional approval at the preliminary approval hearing:

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal…may be set out in conditional orders granting tentative approval to the various items submitted to the court. Three basic rulings are often conditionally entered at this preliminary hearing. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

*4 Newberg on Class Actions* § 11.26.

Pursuant to the Settlement Agreement, the Settlement Class is defined as "[f]ormer employees who worked for KinderCare Education LLC in the State of California at any time between January 24, 2016, through November 5, 2024, whose employment was separated for any reason (voluntary or involuntary), including without limitation, resignation, termination, and/or lay-off, and during their employment was paid their wages via a non-paycard method but upon their separation of employment were paid their final pay on a paycard and were subsequently charged a fee on the paycard for any usage, as reflected in ADP's records of paycard activity." Settlement Agreement ¶ 3.

The proposed Settlement Class meets all the requirements for class certification as follows:

### 1. Numerosity

The numerosity requirement is satisfied if the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Based upon Defendant's records and records from ADP, the Settlement Class will consist of approximately 3,469 individuals. Settlement Agreement ¶ 10; Tulyathan Decl. at ¶ 25. Accordingly, here, the Settlement Class is numerous and clearly satisfies numerosity.

### 2. Ascertainability

As stated above, Defendant has already ascertained the Class Members through Defendant's and

ADP's records.  Settlement Agreement ¶ 10; Tulyathan Decl. at ¶ 25.

### 3.    Typicality

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: *i.e.*, those claims arise from the same course of conduct that gave rise to the claims of other settlement class members.  *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).

Here, Plaintiff submits that her claims are typical of those of other Class Members because she alleges that she suffered injury from the same specific actions that she alleges harmed other members of the Settlement Class.  Specifically, Plaintiff alleges that she received a paycard loaded with her final wages upon separation of employment.  Plaintiff did not authorize Defendant to pay her via paycard, and incurred fees with usage of the paycard.  Westmoreland Decl. at ¶ 3.  It is Plaintiff's position that her claims are typical of the Settlement Class, because they arise from the same factual basis and are based on the same legal theory as those applicable to the Class Members.  See *id*.

### 4.    Commonality

The commonality requirement is met when there are questions of law and fact common to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (1998) ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts couple with disparate legal remedies within the class"). Commonality requires only that some common legal or factual questions exist; the plaintiffs need not show that all issues in the litigation are identical. *See Richmond v. Dart Industries, Inc*., 29 Cal. 3d 462, 473 (1981). Defendant's conduct is central to the commonality inquiry. *See City of San Jose v. Superior Court*, 12 Cal. 3d 447, 460 (1974); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 812-13 (1971). Where the employer's conduct is uniformly directed at a class of employees, as it is here, the class wide impact of the defendant's policies satisfies the commonality requirement. *See Stephens v. Montgomery Ward & Co*., 193 Cal. App. 3d 411, 421 (1987). Here, Plaintiff contends the common issues include, among other things, whether Defendant violated the Labor Code by issuing payment of final wages via paycard without employee authorization.  Tulyathan Decl. at ¶ 3.

//

### 5.    Adequacy

Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling conflicts of interest with other members of the class and counsel are competent and well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiff submits that no conflict exists between Plaintiff and the Settlement Class because Plaintiff allegedly has suffered the same alleged violations as all Class Members and has the incentive to fairly represent all Class Members' claims. Westmoreland Decl. at ¶¶ 6-7. Despite the settlement, Plaintiff remains willing to vigorously prosecute this action to the benefit of the Settlement Class.

Furthermore, Plaintiff is represented by attorneys who have extensive experience in complex wage and hour litigation as is detailed in each of their declarations supported herewith. Tulyathan Decl. ¶¶ 53-56; Lee Decl. ¶¶ 12-13; Marder Decl. ¶¶ 11-15.

### 6.    Common Questions of Law and Fact Predominate

Plaintiff contends that common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3). These issues of fact and law raised in this action are common to all members of the Settlement Class and predominate in this case. Here, Plaintiff contends that Defendant issued payment of final wages to separated employees on a paycard without employee authorization, and that employees were charged fees for use of said paycard. As such, Plaintiff contends that Defendant failed to pay all wages owed upon separation of employment. Based on discovery, Plaintiff believes and asserts that Defendant committed these violations as to Plaintiff in the same manner as to all Class Members.

### 7.    Superiority of Class Action

Plaintiff submits that the requirement that a class action is superior to other methods of adjudication under Rule 23(b)(3) is also met. Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See*, *e.g.*, *Hanlon*, 150 F.3d at 1022. Without class-wide relief in this action, Class Members would be forced to litigate numerous cases on a piecemeal basis for relatively low potential damages. *See Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008) (small interest in individual litigation

17

where damages averaged $25,000-$30,000 per year of work).

       **E.**       **The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion**

              **1.**       **The Settlement May be Presumed Fair and Reasonable**

There is a presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (citations omitted); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.").

Additionally, courts presume the absence of fraud or collusion in the negotiation of settlement unless evidence to the contrary is offered. *See Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not conclusive, the court can properly take them into account, particularly where, as here, they have already been involved in extensive litigation and extensive formal and informal investigation and discovery, appear to be competent, and have experience with this type of litigation. *4 Newberg on Class Actions* § 11.47; *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 ("So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement…and 'great weight' is accorded to the recommendations of counsel, who are most closely

acquainted with the facts of the underlying litigation.") (citations omitted).  Here, this settlement was reached after years of contentious litigation, discovery and investigation, a full day of mediation, production of payroll data and third party paycard records, and continued negotiations. Therefore, a presumption of fairness exists.

### a.    Experience of Class Counsel

Here, counsel for Parties have a great deal of experience in wage and hour class action litigation. Plaintiff's counsel has been approved as class counsel in a number of other wage and hour class actions. Tulyathan Decl. at ¶¶ 53-56; Lee Decl. at ¶¶ 12-13; Marder Decl. at ¶¶ 11-15. Moreover, Plaintiff's counsel conducted an extensive investigation and discovery of the factual allegations involved in this case prior to filing suit and throughout the course of litigation. Thus, based upon such experience and knowledge of the current case, Plaintiff's counsel believe that the current settlement is fair, reasonable and adequate. Tulyathan Decl. at ¶¶ 43-44; Lee Decl. at ¶¶ 2-5; Marder Decl. at ¶ 16.  Pursuant to the Northern District Procedural Guidelines, information regarding Plaintiff's counsel's past comparable class settlement with paycard claims is detailed in the Declaration of Mai Tulyathan.  Tulyathan Decl. at ¶ 57.

### b.    Investigation and Discovery Prior to Settlement

As mentioned, Class Counsel conducted significant investigation and discovery in furtherance of the prosecution of this action. This investigation and discovery included, among other things: (a) propounding and receiving responses to written interrogatories; (b) negotiating a *Belaire West* notice process; (c) inspection and analysis of voluminous electronic payroll and paycard records produced by Defendant and ADP throughout the course of litigation; (d) taking the deposition of Defendant's FRCP 30(b)(6) corporate representative; and (e) extensive research and litigation of the substantive issues in this case.  Tulyathan Decl. at ¶¶ 15-21.  Plaintiff also engaged an expert to analyze the paycard records produced by ADP.  *Id*. at ¶ 19.

To evaluate the damages and penalties, Plaintiff reviewed payroll data and paycard data produced through formal discovery and litigation.  *Id*. at ¶ 39.  Plaintiff then analyzed and calculated maximum exposure of damages and penalties applicable to the entire class for the class period.  Plaintiff also analyzed the paycard data from ADP to determine the amount of fees that were charged in

connection with usage of the paycards.  *Id.*

There are approximately 3,469 Class Members who were paid via paycard for their final wages and were charged fees for usage of said paycard.  Tulyathan Decl. at ¶ 40.  Based on data produced by ADP showing the fees for usage of paycards, Plaintiff calculated the total amount of fees that Class Members were charged for usage of the paycards to be approximately $38,180.41.  *Id.*  Here, the settlement affords Class Members relief as each Class Member would fully recover the amount of fees charged in connection with the use of the paycards, as well as any potential penalties resulting from the fees.  *Id.*

While Plaintiff alleges waiting time penalties associated with the use of paycards, Plaintiff will have to prove the willful/intentional element to recover any waiting time penalties under Labor Code § 203.  Thus, if Plaintiff cannot establish the willful/intentional standard as required by Labor Code § 203, the value of Plaintiff's claims would be significantly diminished.  Indeed, should the Court find against Plaintiff on willfulness, the total waiting time penalties recoverable by Plaintiff would be $0.  *Id.* at ¶ 41.

With respect to PAGA, Plaintiff estimated PAGA penalties for paycard violations to amount to $1,040,700 (3,469 former employees x $100 x 3 sets of violations[3]).  *Id.* at ¶ 42.

Contemporaneous with the filing of this Motion, Plaintiff's counsel will provide notice to the LWDA of this Motion and Settlement Agreement.  *Id.* at ¶ 62, Ex. D.

Based on the foregoing, the settlement is fair, reasonable and adequate.

**2.      The Settlement is Fair, Reasonable, and Adequate**

The settlement for each Participating Class Member is fair, reasonable, and adequate, given the inherent risk of going forward with trial, the risk of appeals, the risks in an area where the law is

---

[3] Pursuant to the PAGA, Labor Code § 2699(f) establishes "*a* civil penalty for *a* violation." Thus, the plain statutory language of Section 2699(f) implies that Plaintiff can pursue a separate civil penalty for each Labor Code violation. Given that there are three underlying violations of the Labor Code with respect to the PAGA paycard claim, Plaintiff premised her paycard violations under the PAGA based on three sets of PAGA penalties: Labor Code § 203, 212, and 213. *See, e.g., Vaquero v. Ashley Furniture Indus., Inc.*, 2012 WL 12965744 (C.D. Cal. 2012) ("PAGA penalties can be 'stacked'—that is, multiple labor code violations in a single pay period may each incur separate PAGA penalties."); *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, at *17, n. 77 (C.D. Cal. 2012) ("[M]ultiple PAGA penalties can be assessed for the same pay period for different Labor Code violations."); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *6 (E.D. Cal. 2010) (concluding that the all PAGA penalties assessed for different Labor Code violations in a single pay period can be stacked).

unsettled, and the costs of pursuing such litigation.

### a.    Risks of Proceeding with Trial and Any Appeals

To assess the fairness, adequacy, and reasonableness of a class action settlement, the court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); MCL § 21.62 at 316.

Here, the settlement affords fair relief to the Settlement Class, while avoiding significant legal and factual battles, especially at trial, that otherwise may have prevented the Settlement Class from obtaining any recovery at all.  Although Plaintiff's attorneys believe the claims are meritorious, they are experienced and realistic, and understand that the outcome of a trial, and the outcome of any appeals that would inevitably follow if the Settlement Class prevailed at trial, are inherently uncertain in terms of both outcome and duration.  Indeed, the Parties have already undergone multiple appellate processes just with regards to arbitrability.  After years of litigation, the Parties were able to reach this settlement. Plaintiff asserts that this settlement is fair, adequate and reasonable, as it provides concrete relief to the Settlement Class without having to proceed to trial and appeal on these issues.

### b.    The Settlement is Within the Range of Reasonableness.

The standard of review for class settlements is whether the settlement is within a range of reasonableness. As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

*4 Newberg on Class Actions* § 11.45.

Here, the settlement fund is non-reversionary, such that 100% of the Net Fund Value will be available for distribution to Class Members who do not opt-out.  Moreover, the settlement does **not** require claim forms.  Rather, Class Members who do not opt-out will automatically receive a check,

meaning that no affirmative action is required from Class Members to participate in the settlement. Tulyathan Decl. at ¶ 35.  Assuming that every Class Member do not opt out of the settlement, each Class Member will receive his or her per capita share, with each person receiving an approximate amount of $138.30.  Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.). *Id*. at ¶ 32.

In addition, as set forth in the Settlement Agreement, the release for Participating Class Members is limited to only the claims alleged in the Operative Complaint:

> Any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees, damages, action or causes of action contingent or accrued for, within the scope of the operative Complaint in the *Westmoreland* action, which include any claims arising from the allegation that KinderCare violated operative law through its issuance of paycards to pay final wages to separated class members or charging them any fees in connection with the use of such cards, including claims pursuant to Labor Code sections 201, 202, 203, 212, 213, and PAGA. The effective date of the release will run from January 24, 2016, through November 5, 2024.

Settlement Agreement ¶ 20.

Pursuant to the Northern District Procedural Guidelines for Class Settlements, the release is appropriate as the released claims are tailored and limited only to the Operative Complaint.

For these reasons, and for the reasons set forth above relating to the total liability and the risks of prevailing on the theories of liability alleged, Plaintiff believes that the current settlement is fair, reasonable, and adequate.

### c.    The Complexity, Expense, and Likely Duration of Continued Litigation Against the Settling Defendant Favors Approval

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157. In applying this factor, the court must weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The Settlement Agreement provides to all Class Members fair relief in a prompt and efficient manner. Were the Parties to engage in continued litigation of this matter and proceed to trial, Plaintiff

may risk losing at trial.  Moreover, following a decision at trial, there is also the possibility of appeal. Given the realities of litigation, this process places ultimate relief several years away.  The idea of balancing a fair recovery now, with settlement dollars being paid out now, as opposed to battling at trial and a lengthy appeal process, is a significant factor to be considered. *DIRECTV*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *4 Newberg on Class Actions* § 11.41.

### d.    Non-Admission of Liability by Defendant

Finally, Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit.  Defendant maintains that it has complied at all times with California wage and hour laws. Because of such denial, if this case is not resolved, there is a high likelihood that the case will continue even after trial and into the process of appeal, especially given the history of this case.

### F.    The Notice to be Given is the Best Practicable

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise." Fed. R. Civ. P. 23(e)(B).

Here, the terms of the Settlement Agreement provide for a notice distribution plan that is designed to achieve the best notice that is practicable under the circumstances. The Settlement Administrator is to mail via first-class U.S. mail a copy of the Court-approved Notice to all Class Members.  Settlement Agreement ¶ 15.  Prior to mailing this notice, the Settlement Administrator will conduct a national change of address search and will conduct skip tracing.  The Notice provides Class Members with the information needed to make an informed decision.  It provides a brief summary of the proposed settlement and information about the lawsuit, a summary of the allocations under the settlement and the amount that the Class Member is estimated to receive, the Class Member's rights and

claims that are included in the release, the Class Member's options including procedures on how to object and opt-out of the settlement, Class Counsel contact information for any questions, information regarding the final approval hearing and how to appear, procedures on how to obtain more information or access Pacer and/or court records, and contact information and website of the Settlement Administrator.  It also explains that those who do not opt out will be bound by the settlement.

### G.    Attorney's Fees, Costs, and Class Representative Enhancement

Pursuant to the terms of the Settlement Agreement, and without opposition from Defendant, Plaintiff will also be entitled to request an enhancement up to a maximum of $10,000.00.  Settlement Agreement ¶ 11.b.  This amount is to compensate Plaintiff for her efforts and work in prosecuting this case and participating in discovery; preparing and sitting for her deposition; remaining available during the mediation; meeting and communicating with her counsel; and searching for and reviewing the pleadings and documents in this case.  Westmoreland Decl. at ¶ 4.

Similarly, Class Counsel will seek an award of attorneys' fees of not more than one-third of the Gross Fund Value (or $300,000.00).  Settlement Agreement ¶ 11.a; Tulyathan Decl. at ¶ 30.

Pursuant to the Northern District's Procedural Guidelines for Class Action Settlements, Class Counsel estimates that they have incurred/will incur over 560.2 hours in the prosecution of this matter, with an average hourly rate of approximately $750.00 per hour.  Tulyathan Decl. at ¶ 60; Lee Decl. at ¶ 14.  Based thereon, the anticipated lodestar is estimated to be approximately $389,760.  This will result in a *negative* multiplier.

Finally, Plaintiff and Class Counsel will seek the reimbursement of costs, which mainly includes filing fees, court fees, mediation costs, expert fees, appellate fees, and travel expenses. To date, such costs are approximately $23,840.47.  Tulyathan Decl. at ¶ 61.  Both the requested enhancement amount and attorneys' fees and costs will be requested simultaneously with Plaintiff's motion seeking final approval of this class action settlement.

### H.    Settlement Administrator

The Parties have selected Phoenix Settlement Administrators as the Settlement Administrator. Settlement Agreement ¶ 11.c.  Pursuant to the Northern District Procedural Guidelines for Class Settlements, the selection process of the settlement administrator is as follows: Plaintiff's counsel

obtained three administration quotes from Phoenix Settlement Administrators, CPT Group, and Xpand. Tulyathan Decl. at ¶ 45. Given that Phoenix Settlement Administrators provided the lowest quote, the Parties subsequently agreed to use Phoenix Settlement Administrators. *Id.* at ¶ 46. Further, notice by U.S. mail along with the National Change of Address search and skip trace for undeliverable mail has been approved by numerous courts and, therefore, the Parties agreed to notice by U.S. mail. *Id.* at ¶ 47. Additionally, a list of cases in which Phoenix Settlement Administrators was appointed as the settlement administrator in cases involving Plaintiff's counsel over the last two years is set forth in their declarations. *Id.* at ¶ 49; Lee Decl. at ¶ 8; Marder Decl. at ¶ 14.

Moreover, the anticipated costs for the settlement administration are expected not to exceed $22,750.00. Tulyathan Decl. at ¶ 48, Ex. C. Plaintiff and her counsel believe that this amount is reasonable in relation to the value of the settlement, as the administration costs account for only 2.5% of the Gross Fund Value. *Id.* The administration costs will be deducted from the Gross Fund Value.

**I.    CAFA Notice**

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, Defendant provided CAFA notice. *See* Dkt. No. 1. Further, Defendant has indicated that it will provide notice to the Attorney General of State of California. Tulyathan Decl. at ¶ 63.

**J.    Other Cases Affected By Settlement**

Pursuant to the Northern District's Procedural Guidelines for Class Action Settlements, Defendant has indicated that there are no other class or PAGA cases that will be affected by this settlement. Tulyathan Decl. at ¶ 64.

**III.    CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court (1) grant preliminary approval for the proposed class action settlement; (2) authorize the mailing of the proposed notice to the Settlement Class; and (3) schedule a "fairness hearing," *i.e.*, a hearing on the final approval of the settlement.

Dated: February 3, 2025

DIVERSITY LAW GROUP, P.C.

By: _/s/ Mai Tulyathan_____
      Larry W. Lee
      Mai Tulyathan
Attorneys for Plaintiff, the Class, and Aggrieved
Employees

NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT