Larry W. Lee (State Bar No. 228175)
Kristen M. Agnew (State Bar No. 247656)
Mai Tulyathan (State Bar No. 316704)
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Tel: (213) 488-6555
Fax: (213) 488-6554
lwlee@diversitylaw.com
kagnew@diversitylaw.com
ktulyathan@diversitylaw.com

William L. Marder (State Bar No. 170131)
bill@polarislawgroup.com
**Polaris Law Group**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333

Attorneys for Plaintiff, the Class, and Aggrieved Employees

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHELLE WESTMORELAND, as an individual and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> KINDERCARE EDUCATION LLC., a Delaware corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. 3:23-cv-03168-JD <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:     October 30, 2025 <br> Time:     10:00 A.M. <br> Courtroom:   11 <br> Judge:    Hon. James Donato <br><br> Action Filed:  January 24, 2019 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 30, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, Plaintiff Rochelle Westmoreland ("Plaintiff") will and hereby does move the Court for an Order (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $300,000.00 (one-third of the Gross Fund Value) and reimbursement of costs in the amount of $32,156.63; and (3) approving Plaintiff's request for an enhancement award of $10,000.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendant KinderCare Education LLC ("Defendant"), Plaintiff has been informed that Defendant will not oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Mai Tulyathan, and Yami Burns of Phoenix Settlement Administrators, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated: September 25, 2025                DIVERSITY LAW GROUP, P.C.


                                        By:    /s/ Mai Tulyathan
                                             Larry W. Lee
                                             Mai Tulyathan
                                        Attorneys for Plaintiff, the Class, and Aggrieved
                                        Employees

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 7

II.   SUMMARY OF ARGUMENT ............................................................................ 8

III.  THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND
SUCCESSFULLY CARRIED OUT ................................................................... 8

    A.   Dissemination of Class Notice ................................................................ 8

    B.   CAFA Notice .......................................................................................... 9

IV.   OVERVIEW OF ISSUES AND ARGUMENT ................................................... 9

V.    LITIGATION HISTORY .................................................................................... 9

VI.   THE SETTLEMENT ......................................................................................... 10

VII.  THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL .............. 11

    A.   The Strength of Plaintiff's Case Supports Settlement .......................... 12

    B.   Risks, Expense, and Duration of Continued Litigation Support Settlement ............... 12

    C.   The Extent of Discovery Favors Settlement ........................................ 13

    D.   The Recommendations of Counsel Favor Approval of the Settlement ........... 14

    E.   The Class Has Responded Favorably to the Proposed Settlement ................... 14

    F.   The Procedure Through Which the Settlement Was Achieved Supports Final Approval
15

VIII. THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED ......... 16

    A.   The Percentage Awarded Should Mimic the Market ........................... 20

    B.   The Lodestar Calculation "Cross-Check" ............................................ 23

        1.   Class Counsel's Lodestar is Reasonable ................................... 24

    C.   The Court Should Approve the Request for Reimbursement of Costs ............ 25

IX.   PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED ............................... 26

X.    THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED ......................... 27

XI.   CONCLUSION .................................................................................................. 27

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF AUTHORITIES

**Page(s)**

**State Cases**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ................................................. 12

*Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001) ............................................................... 25

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016) ................................................... 18, 19

*Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860, 871 ................................... 19, 20

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 412 (2010) ................ 26

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 447 (2000) ........................... 25

**Federal Cases**

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) .................................. 14

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ..................................................... 17

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ......................................... 16, 17, 25

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ....................................... 14

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) ............................... 27

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ....................... 17, 21

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ....................................... 17

*Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ............................................................................................ 18

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) ................. 12, 13, 14, 15

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) ................................ 14

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) .................................... 11

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ............................................... 27

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) ............. 12, 13, 14

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ............................... 14

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) ..................................................................... 20

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251-252 (S.D. Ohio 1991) ............................................................................................ 27

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ..... 18

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)................................................................. 17

*Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) ............................................................................................................................ 27

*Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007).................. 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ............................................... 11, 12, 15

*In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ................................................. 17

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) ............ 27

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)...................................... 13

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)........................................ 14

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995).................................................. 17

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000) ...... 23

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881) ............................................. 17

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ...................................................... 11

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) .................................................. 14

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166) ...................... 19

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)........................................ 16

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019) ........................................ 22

*Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ........................................ 18

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)................................................................. 17

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) ...................... 12

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ...................................... 23

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982)............................................................................................... 15, 16

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999)........................................ 14

*Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34)........................................ 19

*Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983)................................................. 14

*Reilly v. Recreational Equipment, Inc.*, N.D. Cal. 3:18-cv-07385-LB ........................................... 19

*Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022) ................ 20, 24

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)................................................. 15

5

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) ...................................................... 17

*Stanton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir. 2003) ........................................................... 26

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016).................... 17, 23

*Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ............................ 27

*Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022)...................................................... 22

*Villalpando v. Exel Direct Inc*., No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) ........................................................................................................................... 19

*Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002).................................................. 18, 24

*Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997) ............................ 16

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ....................................................... 14, 16

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55) ....................................................................................................................... 19

**Statutes**

Labor Code § 218.5.............................................................................................................. 25

Labor Code § 2698, *et seq*. .................................................................................................. 9

Labor Code § 2699(g)(1) ..................................................................................................... 25

Labor Code § 2802(c) .......................................................................................................... 25

Labor Code §§ 201-203 ....................................................................................................... 9

**Other Authorities**

*4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002).......................................................... 16

Class Action Fairness Act of 2005.............................................................................................. 7

*Manual for Complex Litigation* (Fourth) § 21.6 (2004) ............................................................ 8, 15

*Manual For Complex Litigation* (Fourth) § 30.42.......................................................................... 16

*Newberg on Class Actions, Fourth Edition, vol. 4, p. 560, § 14.6* ................................................ 17, 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Rochelle Westmoreland ("Plaintiff") seeks final approval of a class-wide settlement reached with Defendant KinderCare Education LLC ("Defendant") (together with Plaintiff, the "Parties").[1]  Plaintiff also seeks an order approving Class Counsel's application for attorneys' fees in the amount of $300,000.00 (one-third of the Gross Fund Value of $900,000.00), reimbursement of litigation costs in the amount of $32,156.63, and Plaintiff's application for an enhancement award of $10,000.00. This request was set forth in the Notice of Settlement of Class Action ("Notice") mailed to all Class Members.  Moreover, the settlement documents, including the Stipulation of Class Settlement and Release, Amendment to Stipulation of Class Settlement, and Second Amendment to Stipulation of Class Settlement (collectively, the "Settlement Agreement" or "Stipulation"), were uploaded and made available to putative class members on the Settlement Administrator's website.  Declaration of Yami Burns of Phoenix Settlement Administrators ("Admin. Decl.") at ¶¶ 5, 15.  As set forth in the Stipulation between the Parties (Dkt. No. 42-1, Ex. A), Defendant has agreed to not object to the requests sought herein.

On June 11, 2025, the Court entered an Order re Preliminary Approval of Class Action Settlement (Dkt. No. 48) ("Preliminary Approval Order").  The Parties now seek this Court's final approval of the settlement.

The settlement requires Defendant to pay the Gross Fund Value of Nine Hundred Thousand Dollars ($900,000.00), a sum which represents a substantial recovery for the members of the Settlement Class.  **Again, this settlement is non-reversionary, such that no monies will revert back to Defendant**.  Settlement Agreement ¶ 9.  As such, there was no claims process involved.  Class Members were given an opportunity to object or opt-out of the settlement.  As of the date of this filing, there have been zero (0) opt outs and objections to the settlement.  Admin. Decl. ¶¶ 7-8.  Accordingly, this shows that all Class Members have reacted favorably to the settlement as there is a **100% participation rate**

---

[1] Defendant has indicated that it provided notice pursuant to the Class Action Fairness Act of 2005 (the "CAFA") of the proposed settlement to the appropriate federal and state agencies on September 24, 2025.  Consistent with 28 U.S.C. § 1715(d), Plaintiff respectfully requests that while the Court proceed with the final approval hearing as scheduled, issuance of any final approval order be deferred until 90 days have passed from September 24, 2025.

**and not a single objection from the 3,119 individuals in the Settlement Class** as of the date of this filing.  Moreover, all of the Court's orders concerning dissemination of the Notice have been followed.

Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

## II.   SUMMARY OF ARGUMENT

As previously detailed in Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 46), this case was vigorously litigated for several years, including numerous motions, discovery, and appeals to the California Court of Appeal, California Supreme Court, and the United States Supreme Court.

The detailed terms of the settlement are set forth in the Settlement Agreement (Dkt. No. 42-1, Ex. A), Amendment to Stipulation of Class Settlement and Release (Dkt. No. 46-1, Ex. B) ("Amendment"), and Second Amendment to Stipulation of Class Settlement and Release (Dkt. No. 46-1, Ex. C) ("Second Amendment") entered into by the Parties and previously provided to this Court. Pursuant to the settlement terms, Defendant will pay the entirety of the Gross Fund Value of $900,000.00, without any reversion to itself.

The proposed settlement meets the criteria for final approval, which are set forth in the *Manual for Complex Litigation, Fourth*, and is well within the range of what would be fair, reasonable, and adequate in this case. Thus, Plaintiff requests that the Court take the final step in the approval process – granting the requested final approval of the settlement which is sought herein.

## III.   THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A.   Dissemination of Class Notice

As noted above, preliminary approval was granted on June 11, 2025.  Dkt. No. 48.  At that time, Phoenix Settlement Administrators ("Settlement Administrator") was appointed by the Court as the Settlement Administrator.  The Parties, through the work of the Settlement Administrator, have complied with this Court's orders concerning dissemination of the class notice.  *See* Admin. Decl.

The Notice was mailed to 3,119 individuals utilizing the data provided by Defendant.  Admin. Decl. ¶¶ 3-5.  As of the date of this filing, three (3) Notices have been returned as undeliverable as updated addresses could not be obtained notwithstanding skip-traces being performed.  *Id.* ¶ 6.

### B.    CAFA Notice

Pursuant to the CAFA, Defendant provided notice of the proposed settlement to the appropriate federal and state agencies on September 24, 2025.  Declaration of Mai Tulyathan ("Tulyathan Decl.") ¶ 20.

## IV.    OVERVIEW OF ISSUES AND ARGUMENT

Plaintiff alleges that, as with all other non-exempt employees of Defendant in the State of California, she was paid her final wages in the form of a paycard without prior authorization or consent. Plaintiff alleges that she was charged fees for use of the card and was unable to access all the monies contained on the paycard, and as such, was not paid all final wages due upon termination of employment, in violation of Labor Code §§ 201-203.  Defendant denies that it engaged in any alleged unlawful conduct and maintains that it has complied with California law.  Further, Defendant contends that it would have prevailed on the merits at trial.

## V.    LITIGATION HISTORY

On January 24, 2019, Plaintiff filed a class action complaint against Defendant in the Superior Court of California, County of San Francisco, on behalf of herself and a proposed class consisting of "all former employees who were employed by Defendants in the State of California at any time from January 24, 2016, through the present, whose employment was separated for any reason (voluntary or involuntary), including without limitation, resignation, termination, and/or lay-off, and during their employment was paid their wages via a non-paycard method but upon their separation of employment received their final wages in the form of an [*sic*] paycard" (the "Action").  Dkt. No. 1-1 at pg. 17.

On February 26, 2019, Plaintiff filed a First Amended Complaint, which alleges causes of action for: (1) violation of Cal. Labor Code §§ 201-203; and (2) violation of Cal. Labor Code § 2698, *et seq*. Dkt. No. 1-1 at pg. 26.  The First Amended Complaint is the operative complaint.

As detailed in Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 46), the Parties then heavily litigated arbitrability in state court, including two motions to compel arbitration and subsequent appeals to the California Court of Appeal, California Supreme Court, and the United States Supreme Court.

On June 27, 2023, the Action was then removed to the United States District Court for the

Northern District of California, Case No. 3:23-cv-03168.  Dkt. No. 1.  Plaintiff filed a motion to remand on July 27, 2023.  Dkt. No. 9.  Plaintiff's motion to remand was subsequently denied.  Dkt. No. 35.

On March 18, 2024, Defendant filed a motion for summary judgment.  Dkt. No. 29.

After further litigation and discovery, the Parties reached a tentative settlement.

## VI.     THE SETTLEMENT

The settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication.  The specific terms of the settlement are set forth in the Settlement Agreement and the Order Granting Motion for Preliminary Approval of Class Settlement.  Dkt. No. 48.  The principal terms are:

a.     Settlement Class is "[f]ormer employees who worked for KinderCare Education LLC in the State of California at any time between January 24, 2016, through November 5, 2024, whose employment was separated for any reason (voluntary or involuntary), including without limitation, resignation, termination, and/or lay-off, and during their employment was paid their wages via a non-paycard method but upon their separation of employment were paid their final pay on a paycard and were subsequently charged a fee on the paycard for any usage, as reflected in ADP's records of paycard activity"

b.     The Settlement Class is releasing:

> Any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees, damages, action or causes of action contingent or accrued for, within the scope of the operative Complaint in the Westmoreland action, which include any claims arising from the allegation that KinderCare violated operative law through its issuance of paycards to pay final wages to separated class members or charging them any fees in connection with the use of such cards, including claims pursuant to Labor Code sections 201, 202, 203, 212, 213, and PAGA.  The effective date of the release will run from January 24, 2016, through November 5, 2024.

Settlement Agreement ¶ 20.

c.     Defendant will pay the Gross Fund Value of $900,000.00. This sum includes payments made to the Class Members, PAGA penalties, settlement administration costs, awards of attorneys' fees and costs, and the class representative enhancement award.

d.     The sum available for payments to Class Members after deductions for the settlement

administration costs, payment of PAGA penalties to the California Labor and Workforce Development Agency ("LWDA"), awards of attorneys' fees and costs, and the class representative enhancement award shall be referred to as the Net Fund Value.  Defendant agrees that it shall pay the entirety (100%) of the Net Fund Value.  **In other words, the settlement is non-reversionary, meaning that no funds will revert back to Defendant.**

e.    No claim forms were necessary for any Class Member to participate in the settlement and receive their share of the settlement.  Thus, any Class Member who did not opt-out in connection with this settlement will automatically receive his/her share of the settlement proceeds.  On average, each Participating Class Member will receive approximately a payment of $159.54.  Admin. Decl. ¶ 13.

f.    Any remaining monies from uncashed checks will be paid to *cy pres* beneficiary Legal Aid at Work.  Settlement Agreement ¶ 13.h.

g.    All of this Court's orders in connection with the settlement administration process have been followed.  *See generally* Admin. Decl.

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy. Clearly, there were significant disagreements between the Parties as to the facts and the law.

## VII.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive court approval. The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The fairness, reasonableness, and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views

of counsel...and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A.    The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, the settlement affords fair relief to the Settlement Class, while avoiding significant legal and factual battles, especially at trial, that otherwise may have prevented the Settlement Class from obtaining any recovery at all.  Although Plaintiff's attorneys believe the claims are meritorious, they are experienced and realistic, and understand that the outcome of a trial, and the outcome of any appeals that would inevitably follow if the Settlement Class prevailed at trial, are inherently uncertain in terms of both outcome and duration.  Indeed, this Action has already experienced review before the California Court of Appeals, California Supreme Court, and United States Supreme Court.  After years of litigation, the Parties were able to reach this settlement.  Plaintiff asserts that this settlement is fair, adequate and reasonable, as it provides concrete relief to the Settlement Class without having to proceed to trial on these issues.

Moreover, even if a violation could be established, as to the PAGA claim, this Court has complete discretion to decrease any applicable penalties that could be assessed.  Indeed, the California Court of Appeals upheld a decision wherein PAGA penalties were reduced by 90%.  *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018).

Therefore, this factor favors settlement.  *See Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); *see also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

### B.    Risks, Expense, and Duration of Continued Litigation Support Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement."  *Dyer*, 2014

WL 5369395, at *3 (citation omitted).  In addition to the obstacles set forth above, even if Plaintiff had prevailed at trial, there was a likelihood that Defendant would have appealed the verdict.  Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement.  *See Dyer*, 2014 WL 5369395, at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

### C.    The Extent of Discovery Favors Settlement

As mentioned, Class Counsel conducted significant investigation and discovery in furtherance of the prosecution of this action.  Tulyathan Decl. ¶¶ 4-5.  This investigation and discovery included, among other things: (a) multiple rounds of written discovery, including interrogatories and requests for production of documents; (b) inspection and analysis of voluminous pay card data and documents, including third-party data and records from ADP; (c) conducting deposition of Defendant's FRCP 30(b)(6) Corporate Representative on topics relating to class certification and liability; (d) sending a *Belaire-West* notice to putative class members; and (e) extensively researching and litigating the substantive issues in this case.  *Id.*  To evaluate the exposure analysis, Plaintiff reviewed data for the entire class, which was provided to Plaintiff through formal and informal discovery.  *Id.*  The Parties attempted mediation back in 2022 during appellate review, during which Defendant provided informal discovery pertaining to the class.  *Id.* ¶ 3.  Plaintiff also received pay card data from ADP, and retained an expert to analyze the data.  After further litigation in the case, Plaintiff was provided with updated data for the entire class, including data regarding the number of employees who have separated from employment and the hourly rates of pay for class members.  *Id.* ¶ 5.  Plaintiff then analyzed and calculated maximum exposure applicable to the entire class.  *Id.*

Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement.  *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3 (parties' participation in written discovery, depositions, witness interviews, and formal mediation favors an informed settlement); *Chun-Hoon*, 716 F. Supp. 2d at 848 ("true value of the class claims is well-known and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed

1    decision about settlement).

2        **D.    The Recommendations of Counsel Favor Approval of the Settlement**

3        The recommendations of experienced counsel should be given considerable weight. *Boyd v.*

4    *Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15,

5    18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement

6    after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp.

7    446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Williams*

8    *v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325

9    (7th Cir. 1980).

10        Lead counsel for Plaintiff has broad experience litigating employment class actions.  Tulyathan

11    Decl. ¶¶ 10-13; Declaration of Larry W. Lee ("Lee Decl.") ¶¶ 8-10.  They support this settlement as a

12    fair and reasonable settlement which is in the best interest of the Settlement Class.  Lee Decl. ¶ 3;

13    Tulyathan Decl. ¶ 6.  Therefore, this factor favors approval of the settlement.  *See Dyer*, 2014 WL

14    5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*,

15    716 F. Supp. 2d at 848 (same).

16        **E.    The Class Has Responded Favorably to the Proposed Settlement**

17        "[T]he absence of a large number of objections to a proposed class action settlement raises a

18    strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559

19    F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal.

20    July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of

21    settlement to prove fairness.").

22        Here, as of the date of this filing, **not a single class member out of 3,119 individuals has**

23    **objected or opted out** of this settlement.  Admin. Decl. ¶¶ 7-10.  In other words, this settlement has a

24    100% participation rate.  *Id.*  Thus, the absence of any objections or opt-outs strongly supports the

25    fairness of the settlement.  *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004)

26    (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing

27    0.05% and 0.56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class

28    in favor of approving settlement where only three of 8,695 class members opted out); *Chun-Hoon*, 716

1  F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction

2  "strongly supports settlement").

3     **F.    The Procedure Through Which the Settlement Was Achieved Supports Final**

4          **Approval**

5          The Ninth Circuit has recognized that the factors to be examined at final approval may differ

6  depending on the circumstance of each case.  *Officers for Justice*, 688 F.2d at 625.  Therefore, although

7  not one of the *Officers for Justice* listed factors, the procedures by which the settlement was achieved

8  also strongly support the fairness of the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851 ("To these

9  factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived

10 at"), citing *Manual for Complex Litigation, Fourth* § 21.6 (2004).  As noted above, the parties

11 participated in arm's length negotiations, including a full day of mediation with Steven J. Rottman, Esq.

12 While the Parties did not settle at mediation, the Parties continued discovery and litigation.  After further

13 litigation and discovery in this case, including conducting multiple rounds of written discovery, taking

14 the deposition of Defendant's FRCP 30(b)(6) witness, and obtaining third-party pay card data regarding

15 deduction of fees, the Parties conducted extensive settlement negotiations and reached a settlement.

16 This weighs in favor of approval of the settlement.

17         Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's

18 length negotiation by capable opponents.  In *Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir.

19 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of

20 the [settling] parties."  *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027.  The primary reason for deferring to

21 such settlements is the experience of counsel and the participation of a neutral, both of which factors are

22 present here.

23         The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of

24 an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by

25 which that outcome must be tested."  *Rodriguez*, 563 F.3d at 965 (citations omitted).  As the Court

26 explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable

27 range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential

28 recovery, and the chances of obtaining it, discounted to present value."  *Id*. at 965 (citations omitted).

*See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *4 Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation, Fourth* § 30.42).

The proposed settlement has no deficiencies.  There is no standard or benchmark for determining whether any given settlement is fair.  "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted).  In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, and negotiation, and involved the efforts of an highly experienced mediator.  Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Settlement Class, as well as Defendant's contention that it would prevail on the merits.

## VIII.    THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Governing Ninth Circuit law, following the clear instruction of the United States Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that percentage awards are to measure against the entire common fund created in the settlement.  In *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing to the Ninth Circuit authority, the Court noted:

> The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.

*See also Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir.1997).

Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a

reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970).  The purpose of this doctrine is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone.  It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund.

Every United States Supreme Court case that has considered the award of attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery.  *See, e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

The Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery).  Although the Ninth Circuit has typically found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have awarded higher amounts.  *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016).  The twenty-five percent benchmark may be adjusted upward or downward depending on the circumstances presented by the particular case.  Indeed, the Ninth Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%, 40% and even up to 50% of the common fund.  *See, e.g.*, *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases).

Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel is seeking here, is appropriate and even desirable in cases like this.  *See Newberg on Class Actions*, *Fourth Edition*, vol. 4, p. 556, §14.6 (noting that percentage of the fund awards are preferable because they align the interests of the attorney with the client, as the attorney is not incentivized to bill unnecessary hours to generate a greater fee); *Boeing*, 444 U.S. at 478.  Unlike the lodestar method which can

1  encourage class counsel to devote unnecessary hours to generate a substantial fee, under the POR

2  [percentage of recovery] method, the more the attorney succeeds in recovering money for the client, and

3  the fewer legal hours expended to reach that result, the higher dollar amount of fees the lawyer earns.

4  Thus, one of the primary advantages of the POR method is that it is thought to equate the interests of

5  class counsel with those of the class members and encourage class counsel to prosecute the case in an

6  efficient manner.

7        As reiterated by the Ninth Circuit, courts are obligated to apply California law in diversity

8  jurisdiction cases in awarding attorneys' fees.  *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas,*

9  *Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity jurisdiction, we are

10 obligated to apply California state law regarding attorneys' fees."); *Vizcaino v. Microsoft Corp.*, 290

11 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.

12 1995); *Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal.

13 Oct. 11, 2016) ("[i]n diversity actions…the Ninth Circuit **applies state law to determine the right to**

14 **fees and the method for calculating fees**") (emphasis added).

15       As this case was removed to this Court pursuant to diversity jurisdiction, Plaintiff respectfully

16 submits that California law should govern this Court's analysis.  The California Supreme Court clarified

17 its stance on common fund cases, ruling, "We join the overwhelming majority of federal and state courts

18 in holding that when class action litigation established a monetary fund for the benefit of the class

19 members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court

20 may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund

21 created." *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480, 503 (2016).  Explaining its ruling, the Court

22 further held that "[t]he recognized advantages of the percentage method – including relative ease of

23 calculation, alignment of incentives between counsel and the class, a better approximation of market

24 conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement

25 and avoid unnecessarily prolonging litigation – convince us the percentage method is a valuable tool that

26 should not be denied by our trial courts." *Id.* (internal citations omitted); *see also Vizcaino v. Microsoft*

27 *Corp.*, 290 F.3d 1043, 1047.

28       Based on this rationale, the California Supreme Court in *Laffite* affirmed a fee award

representing one-third of the fund and rejected the objections of putative class members to this award. *Laffitte*, 1 Cal. 5th at 506. Further, this was based on a lodestar amount that required a multiplier of 2.13. *Id*. at 487. As the Court held, only when the multiplier is "extraordinarily high or low [should] the trial court [] consider whether the percentage method should be adjusted so as to bring the imputed multiplier within a justifiable range." *Id*. at 505. Moreover, in the *Laffitte* intermediate court decision, the court observed that "33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Laffitte v. Robert Half Int'l., Inc*. (2014) 231 Cal. App. 4th 860, 871.

Numerous district courts have followed *Laffitte* in awarding 1/3 of the common fund. Indeed, District Judge Edward Davila in *Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) and *Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166), followed *Laffitte* in awarding Plaintiff's counsel (the same counsel as in the instant case) one-third of the common fund of $1.15 million based on a multiplier of 1.32 and $3.8 million based on a negative multiplier, respectively. Magistrate Judge Laurel Beeler in *Reilly v. Recreational Equipment, Inc.*, N.D. Cal. 3:18-cv-07385-LB, also awarded Plaintiff's counsel one-third of the common fund of $5 million based on a multiplier of 2.7.

Additionally, the Northern District Court in *Villalpando v. Exel Direct Inc*., No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016), cited *Laffitte* when awarding 33% of the common fund:

> Plaintiffs' fee request of $ 4,500,000 represents one-third of the Settlement Fund, which is reasonable under both applicable law, and in light of the contingent risk, Counsel's documented lodestar, the complex and protracted nature of the case, and strong result for the Class.

*Id*.

Further, the Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55), followed *Laffitte*, in awarding 1/3 of the common fund of $3.4 million, or $1,133,333.33 in attorneys' fees applying a multiplier of 1.328. Dkt. No. 55 at 12-14. In so holding, the Court reiterated that "[i]n a diversity action such as this, federal courts apply state law both to determining the right to fees and the method of calculating them." *Id.*; *see also Emmons v. Quest Diagnostics Clinical Labs., Inc*., No. 113CV00474DADBAM, 2017 WL 749018,

at *7 (E.D. Cal. Feb. 27, 2017) (following *Laffitte* in awarding 33% of the common fund; "[t]he California Supreme Court recently held that the percentage-of-fund method of calculating attorneys' fees survives in California courts").

Finally, this Court in *Rodriguez v. Nike Retail Servs., Inc*., 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022), approved 1/3 of the common fund "especially in light of the significant amount of work Class Counsel performed in this case, including for the appeal to the Ninth Circuit, and the excellent results achieved during a time when California law was unsettled." *Id.* Here, Class Counsel respectfully submits that this case was also heavily litigated, and Class Counsel engaged in substantial motion and appallate practice, including briefing before the California Court of Appeal, California Supreme Court, and United States Supreme Court, two motions to compel arbitration, and motions for remand and summary judgment. Based on the lengthy litigation history, Plaintiff respectfully requests 1/3 of the common fund in this case.

### A.    The Percentage Awarded Should Mimic the Market

*Newberg on Class Actions*, *Fourth Edition*, vol. 4, p. 560, § 14.6 contains an interesting discussion of the concept of a marketplace analysis and why it is so valuable in determining a percentage award:

> [Goodrich and Silver]…suggest that fee awards should be consistent with contingent fee arrangements negotiated in non-class litigation:
>
> The percentage method is consistent with and is intended to mirror practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As Judge Posner emphasized in *In re Continental Illinois Securities Litigation*s, "[t]he object in awarding a reasonable attorney's fee...is to simulate the market...The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." In non-class litigations, one-third contingency fees are typical. In their concurring opinion in Blum, Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."
>
> If named plaintiffs have agreed to pay a one-third contingent fee, that is powerful evidence of a reasonable fee. One of the best ways to demonstrate the value of counsel's work to the class is to review the consideration agreed to be paid by the named plaintiffs in their contracts. If the named plaintiffs have employed their counsel by contingent fee agreements that obligated

them to pay one-third of the recovery, it would indeed be inequitable for the members of the class, who will enjoy the benefits of this settlement without incurring the risks of bringing the claim, to pay less than the named plaintiffs.

The complex and heavily litigated nature of this litigation, and its successful result lead to the clear conclusion that the fee request herein is reasonable. In *Camden I Condominium Association, Inc., v. Dunkel*, 946 F. 2d 768 (11th Cir. 1991), the court identified various factors to be considered in arriving at a common fund fee determination. Each of the factors is now briefly addressed.

1.     The time and labor required – this is overwhelmingly established in this motion, based upon the work involved, and the supporting attorney declarations and time charts submitted;

2.     The novelty and difficulty of the questions involved – this case involved novel and difficult questions of evolving law, particularly with respect to arbitrability. From the outset, Defendant pursued arbitration aggressively, and the Parties heavily litigated arbitrability for more than four years across multiple forums;

3.     The skill requisite to perform the legal services properly – this goes hand in hand with the first and second factors. Class Counsel was able to litigate this case effectively and ultimately achieved a very good result for the Settlement Class because of Class Counsel's experience in litigating wage and hour cases;

4.     The preclusion of other employment by the attorney due to the acceptance of the case – the case required and demanded attorney time on both sides. The result of this scheduling was that Class Counsel could have spent such time on numerous other matters while this litigation was ongoing. Indeed, Class Counsel briefed and argued numerous motions, pursued appellate review in multiple jurisdictions, and zealously represented Plaintiff and the Settlement Class;

5.     The customary fee – as discussed above, courts have approved an award of 33.33% of the Gross Fund Value (including this Court), which is the standard percentage pursuant to California law;

6.     Whether the fee is fixed or contingent – this matter was clearly contingent without any sort of fixed or guaranteed fees for Class Counsel. Indeed, Class Counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Class Counsel were successful in this litigation;

7.      Time limitation imposed by the client or the circumstances – although the client did not impose any time limitations, Class Counsel invested a significant amount of time in this case;

8.      The amount involved and results obtained – this is discussed above;

9.      The experience, reputation, and ability of the attorney – as evidenced by the supporting declarations, Class Counsel has been designated and certified as class counsel in numerous other matters, including in the Northern District of California;

10.     The nature and length of the relationship with the client – this does not apply; and

11.     Awards in similar cases – similar cases were identified in the section above.

Class Counsel has diligently and zealously litigated this case over several years, including successfully obtaining a peremptory writ of mandate to challenge an order to arbitrate, supporting the issuance of the writ through additional appellate forums, and generally fighting against sustained attempts by Defendant to rebut the claims. In doing so, Class Counsel not only preserved Plaintiff's and the class's ability to litigate their claims in a judicial forum, but also navigated the unsettled and evolving legal landscape created by the U.S. Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022). Significant risks were assumed by Class Counsel in litigating this case. Class Counsel's lodestar cross check also supports the award of the 33.33% percentage fee given that their lodestar cross check results in a negative multiplier.

Moreover, as this Court knows, Plaintiff's attorneys heavily and aggressively litigate numerous wage and hour class actions on behalf of workers throughout the State of California – all cases of which are on a contingency fee basis. *See*, *e.g.*, *Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019); *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019). For example, in *Magadia*, plaintiff's counsel litigated that case for several years, including trying the case to a successful $102 million judgment on behalf of the class. Walmart appealed and prevailed, such that plaintiff's counsel lost their judgment and were not reimbursed any costs or attorneys' fees. As such, employment class actions present significant risks. Nevertheless, Plaintiff's counsel zealously represents workers notwithstanding the potential for losing cases, or not being reimbursed attorneys' fees and costs for years of tireless litigation.

The fee sought relates to all efforts expended by Class Counsel for the complete handling of the

1  class/representative action, including any additional work remaining to be performed by Class Counsel

2  in securing final Court approval of the Settlement, and later following through to ensure that the

3  Settlement is fairly administered and fully implemented.

4      A significant amount of work on the part of Class Counsel went into achieving this resolution.

5  Based upon the factors relating to approval of percentage of the fund fee awards, Class Counsel submits

6  that the effort and result justify the requested percentage fee requested.  As a secondary "cross-check" to

7  the percentage of the common fund award, Class Counsel are also providing this Court with a time and

8  task chart, which breaks down the tasks and time spent by each firm, so that the Court can conduct a

9  lodestar analysis.

10      Plaintiff's attorneys' time and task charts show in this case that Class Counsel lodestar through

11  the completion of settlement administration is $685,730, which results in a ***-2.286 multiplier (negative***

12  ***multiplier)*** of the requested amount.

13  **B.    The Lodestar Calculation "Cross-Check"**

14      It has been noted that it is sometimes helpful to courts to "cross-check" a percentage award by

15  employing a lodestar with a multiplier analysis. While the lodestar method is generally considered

16  inappropriate in a common fund case where real cash benefits (as opposed to coupons or non-monetary

17  benefits) are made available to class members, its use can provide further validation of the

18  appropriateness of the percentage award approach. *See In re Prudential Ins. Co. of America Sales*

19  *Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000). Such is the case here.

20      The declarations of Class Counsel evidence the fact that they devoted approximately 907.2 hours

21  of time to this litigation to date.  Lee Decl. ¶ 11, Ex. A; Tulyathan Decl. ¶ 14, Ex. A.  These hours are

22  summarized in the time and task charts that are attached to Class Counsel's declarations.  And, to the

23  extent that any argument is made that the time spent was duplicative, the way in which Class Counsel

24  work is for each attorney to handle a task and for the other attorneys to review and revise the work,

25  which is identical to the way defense firms staff and handle cases.  More importantly, as recently noted

26  by the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11,

27  2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'" Citing

28  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

In addition, as explained above, Class Counsel expect to expend an additional 10 hours post-approval, including attending the final approval hearing, handling any issues regarding disbursement, and further conferring with the Settlement Administrator and/or Class Members regarding the settlement.  Tulyathan Decl. at ¶ 14. Thus, Class Counsel will have expended 917.2 hours through completion of settlement administration.

Applying the various hourly rates of the lawyers who dedicated their efforts to this matter, a lodestar of $685,730 is established for the amount of work spent through final approval and for post-approval administration of the settlement.  Lee Decl. ¶ 11, Ex. A; Tulyathan Decl. ¶¶ 14-15, Ex. A. The percentage award sought by Class Counsel, if converted to the lodestar method, would entail a negative multiplier of approximately 2.286.  In the Ninth Circuit, **positive** multipliers "ranging from one to four are frequently awarded…when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir.).  Again, in *Spann*, the Court granted a 3.07 multiplier.  This Court also approved of a 1.17 multiplier in *Rodriguez*, 2022 WL 254349, at *6.  Thus, as set forth in the Introduction to this motion, the fee application is supported whether by the cross-check lodestar/multiplier method discussed herein, or by the percentage of the common fund discussed in the preceding sections.

### 1.    Class Counsel's Lodestar is Reasonable

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable.  Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation.  The background and experience of Class Counsel are fully set forth in the declarations filed in support of this motion.  The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation.  The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed.  Lee Decl. ¶¶ 11-14, Ex. A; Tulyathan Decl. ¶¶ 14-18, Ex. A.

As discussed in their supporting declarations, Class Counsel are well-experienced litigators, including in class action litigation.  Lee Decl. ¶¶ 8-10; Tulyathan Decl. ¶¶ 10-13.  Under California law,

counsel are entitled to compensation for all hours reasonably spent on the matter.  *Ketchum vs. Moses*, 24 Cal. 4th 1122, 1133 (2001).  Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself…." *Vo v. Las Virgenes Municipal Water Dist*., 79 Cal. App. 4th 440, 447 (2000).  In addition, the attached time and task charts clearly reflect the many hours which were necessarily spent on the case.

In the Litigation History section above and in Plaintiff's Renewed Motion for Preliminary Approval, the nature and extent of the proceedings held throughout this litigation were set forth in detail. Without repeating the same, it is incorporated herein.  The total hours and billing thus generated are all supported herein.  In sum, it is submitted that the reasonableness of Plaintiff's lodestar is manifest.  In the present case, Class Counsel's lodestar ***well exceeds*** the requested amount and thus, heavily favors granting 33.33% fees in this case.

Whether analyzed under the percentage of the fund approach, which is the dominant view, or via the cross-check approach under the loadstar/multiplier approach, the fees are fully supported.  This entire case has been litigated from the onset, demanded an extraordinary effort on the part of Class Counsel, and further required substantial costs advanced especially given the multiple appeals.

Finally, and as instructed by our Supreme Court and Ninth Circuit law, fees should be awarded off of the total fund created.  It is the creation of the fund, and the opportunity to simply receive one's share, which creates the right to the fee.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

### C.    The Court Should Approve the Request for Reimbursement of Costs

The request for reimbursement of costs, in the amount of $32,156.63 is fair and reasonable.  As stated above, the costs are all litigation related costs, which have been detailed in the supporting declaration of Class Counsel.  Tulyathan Decl. ¶ 19, Ex. B.  The authority for the Court to award costs is the parties' Settlement Agreement and Labor Code §§ 218.5 and 2699(g)(1).  Further, pursuant to the Settlement Agreement, Defendant has agreed not to oppose any request for reimbursement of costs up to $50,000.00, but the actual costs that are being sought are much less than the amount allotted in the Settlement Agreement.  Pursuant to all of the authority cited above, Class Counsel should be awarded their costs.

//

1    IX.    **PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED**

2          Finally, Plaintiff's enhancement is also justified given the duration of the litigation and her

3    availability throughout the litigation to cooperate in searching for and producing documents,

4    participating in the discovery process, preparing and sitting for her deposition, and participating in

5    mediation.  Plaintiff respectfully requests that the full amount of the service payment be awarded to her

6    for the efforts that she undertook on behalf of the Class Members.  It is commonly held that it is

7    appropriate to recognize the role of the representative plaintiff without whose actions and courage the

8    benefits of the settlement, which are conferred on the class as a whole, would never have been achieved.

9    The criteria courts may consider in relation to incentive payments include: (1) the risk to the class

10   representative in commencing the suit, both financial and otherwise; (2) the notoriety and personal

11   difficulties encountered by the class representative; (3) the amount of time and effort spent by the class

12   representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by

13   the class representative as a result of the litigation.  *See Munoz v. BCI Coca-Cola Bottling Co. of Los*

14   *Angeles*, 186 Cal. App. 4th 399, 412 (2010) (citing *Stanton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir.

15   2003)).  Each of these factors favors the service awards requested in the present case.

16         Plaintiff is the only representative in this case.  Plaintiff provided information regarding the facts

17   involved and the nature of Defendant's practices.  Plaintiff also discussed the case and facts related to

18   this matter with her attorneys on numerous occasions.  Plaintiff has made herself available to answer

19   questions and to sign declarations in support of the various motions that have been brought in this case.

20   *Id*.  Plaintiff also provided discovery responses, and searched for and provided documents.  Plaintiff

21   further prepared for and testified at her deposition.

22         Plaintiff assumed these risks from which the whole Settlement Class benefited.  Class Members

23   did not have to file individual lawsuits, nor did they have to bear the risks of payment of fees and costs

24   should they not prevail.  Class Members also do not have to face the risk of potential retaliation or risk

25   of future employment, due to Plaintiff's efforts.  In short, Plaintiff sacrificed a significant amount of

26   time, effort, and her own rights in bringing about the benefits to the Settlement Class.

27         The payment of enhancement awards to successful class representatives is appropriate and the

28   amount of $10,000.00 to Plaintiff is within the typically accepted range.  *See e.g. Van Vranken v.*

*Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000 incentive award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251-252 (S.D. Ohio 1991) ($50,000 awarded to each class representative); *Glass v. UBS Fin. Servs.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) (awarding $25,000 Incentive award in FLSA overtime wages class action); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative in ERISA case). Moreover, a $10,000.00 service payment represents a mere **1.1%** of the Gross Fund Value. For such reasons, Plaintiff respectfully requests that this Court find the enhancement payment amount of $10,000.00 to Plaintiff as fair, reasonable, and adequate and that the enhancement payment be awarded to Plaintiff.

## X.    THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED

Here, Phoenix Settlement Administrators dutifully administered the settlement. *See generally* Admin. Decl. The Settlement Agreement provides up to $22,750.00 for Phoenix's costs. Settlement Agreement ¶ 11.c. Plaintiff respectfully requests that the Court award Phoenix its costs in the amount of $22,750.00.

## XI.    CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion be granted in its entirety and grant Class Counsel's fee request of $300,000.00, costs requested in the amount of $32,156.63, class representative enhancement of $10,000.00, and settlement administration costs of $22,750.00. The Parties have reached this settlement following extensive litigation, ongoing case discussions and arm's-length negotiations. Plaintiff respectfully requests that the Court:

1.    Grant final approval of the proposed settlement;

2.    Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.    Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

4.      Enter the proposed Final Approval Order and Judgment submitted herewith; and

5.      Retain continuing jurisdiction over the implementation, interpretation, and consummation of the settlement.


Dated: September 25, 2025                    DIVERSITY LAW GROUP, P.C.

By: _/s/ Mai Tulyathan_____
                Larry W. Lee
                Mai Tulyathan
Attorneys for Plaintiff, the Class, and Aggrieved
Employees

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**